Good morning, ladies and gentlemen. Our first case of the morning is 120643 Village of Bartonville v. Salvador Lopez et al. Are you ready to proceed? Yes, Your Honor. Are we ready? May it please the Court. My name is Ken Snodgrass, and it is my pleasure today to be representing the Village of Bartonville in this matter. Counsel, this case essentially involves the situation of the termination of a police officer. I would submit from the outset that the parties are in agreement that the standard of review is de novo. Our argument today is that the appellate court and the majority opinion err in reversing the trial court's decision granting summary judgment on behalf of the Village of Bartonville. I believe a review of the facts is somewhat important when addressing the issues that arise because of the primary statutes involved in this appeal. The Illinois Municipal Code, Administrative Review Law, and the Illinois Uniform Arbitration Act. Those acts have been interpreted by multiple appellate courts which have interpreted their interrelationship. For instance, the Board of Governors out of the 4th District, the Rockford case out of the 2nd District, and the two 3rd District cases, the Peoria Firefighters Local 540 and the Village of Creek 4. Briefly, the facts. There was a termination hearing on October 3rd, 2014. Officer Lopez was represented by the benevolent. Officer Lopez and the benevolent at the outset of the hearing argued the Board had violated the 30-day rule of the Illinois Municipal Code. In fact, they had filed a pending declaratory judgment on 9-29-2014, raising that argument. They also argued that the matter was subject to grievance and arbitration provisions of the collective bargaining agreement. At the time of the termination hearing, there was no pending grievance. Those arguments essentially were denied when the hearing went forward. It proceeded to a full hearing. At the close of the hearing, there was a discharge of Officer Lopez. The order was served on October 30th, 2014. There was no timely appeal regarding the Board's decision. There's no dispute on that. After the hearing and after the oral pronouncement by the Board, there was a grievance filed on October 13th, 2014 under the collective bargaining agreement. There was a response filed on October 17th, and there was a denial of that grievance. The bill that's in it filed a complaint, declaratory judgment, and stay of arbitration with the circuit court. The benevolent filed an answer in affirmative defenses and a counter plaintiff's complaint on February 4th and sought grievance arbitration. One of the things that must be pointed out to the court, there is a separate appeal that was in the front of the Third District in which the decision has been rendered on July 19th, 2016. That appeal involved a 30-day rule that was argued under the code in regards to the jurisdiction of the Board. The Third District affirmed the private court's granting of summary judgment, finding the Board, based on the facts of the case, did not violate the 30-day rule. I believe that decision is final, as there's been no petition for rehearing, nor any petitions of this Board. So what we have going on here is we have a two-front battle, somewhat, that took place. There was a full hearing in front of the Board. Officer Lopez was fully represented. A decision was made. That decision was not appealed under the Administrative Review Act. That decision, if it had been appealed, could have raised the issues that was raised in front of the Board. Those issues being the 30-day issue, the issue of the grievance and the collective bargaining agreement, and even more importantly, maybe the merits of the case. And that wasn't done here. We would submit that, therefore, since that action was not taken, the claim currently is barred by res judicata. We have cited in our brief the elements of res judicata in this particular instance and the case law that's interpreted those elements. Res judicata applies when there's a final judgment, there's privity of parties, and privity of the causes of action. Rockford v. Unit 6 of Policeman's Malevolent Protective Association is a case that's remarkably on point in the case we have here. One of the differences there was the Rockford case actually took the appeal to the circuit court but took it no further. We therefore believe that there was a final judgment entered that was not properly appealed and the elements of res judicata were fulfilled. If there was clearly the identity of the parties, there was clearly identity of causes of action, and there was the opportunity to appeal that case. In the second district, just some of the facts out of Rockford. Rockford, in essence, there was a hearing in front of the Board. The Board rendered a decision. That decision was appealed to circuit court and it was appealed no further. Subsequent to that time, a grievance was filed at which time the court entered an order permanently staying the grievance based on the city of Rockford's plea. We would also point out that this case not only involves the issue of res judicata, but it also involves the issue of the judicial economy here that we're dealing with. If this case, the irony of this case is somewhat is the trial court judge, Judge Mack in this case, if the case would have been appealed from the Board, would have heard all of these issues. Instead, he heard the issues strictly related to us attempting to permanently enjoin the grievance arbitration. In your res judicata analysis counsel, does it make any difference that the hearing before the Board of Police and Fire Commissioners is a quasi-judicial proceeding? I think, Your Honor, that the cases we have cited in the brief talks about it being in the nature of a judicial proceeding. I don't think it does make a difference based upon the case law of the city of Rockford, the village of Precourt, and the city of Peoria case that was cited. And I think those cases also stand for the issue regarding the judicial economy that is merited by the procedure that was outlined in the city of Rockford in those cases. Thank you. The issue on the language of the contract, if you find procedural that they failed to properly appeal this case when they had that opportunity, then I don't think we need to address the collective bargaining agreement language at all. They had that opportunity to have it, and it wasn't. But I want to touch upon that because Judge Mack and his decision also touched upon the collective bargaining agreement analysis. We talked about the two different provisions in the collective bargaining agreement. One is on grievance, and one is on discipline. And the fact that there was no interrelationship or binding in that agreement to show that they were interrelated, and therefore he found that the board had jurisdiction in the matter moving forward. You've got to remember in this particular case, a grievance was filed seeking the same redress that was being sought in front of the board. That is, Mr. Lopez not being terminated and being allowed to continue on as a police officer. Now when you look at the cases that were cited by the appellee in their brief, for instance, Thompson. Thompson, it's clear on the face of the Thompson case that the matter was subject to grievance arbitration. Donaldson. Donaldson was a case that was in front of the CBI Commodity Board of Trade. It did not involve the statutes that we have here today, that being the Administrative Review Act or the Illinois Municipal Law Act. I think what happened here is they picked a road. They picked a road to travel down. Once that road ended, they tried to go to a different road. And I think the case law prevents them from doing so based on the principles of restitution and collateral establishment. But as a secondary argument, we would submit that the language, even in the collective bargaining agreement, would prevent that. We filed an affidavit by the Chief of Police, Brian Fingle, in regards to our complaint to stay the grievance procedures. That affidavit is essentially rebutted, is unrebutted, excuse me, in regards to there never being a situation where the disciplinary matters were agreed and, in fact, it went in front of the Police and Fire Commission Board. Now, I know the argument is this. Well, wait a minute. Doesn't that get back to what the Third District was arguing was? Doesn't that get back to why the determination of arbitration in the first place? I would submit that an unrebutted affidavit, just as it was in the City of Rockford, they had affidavits and testimony in that case regarding the fact there had been no prior grievance arbitration in regards to cases of that type, that, therefore, it should be in front of the Police and Fire Commission Board. I think it's consistent. I think that's a consistent argument to be made here. In regards to... So, as a fallback position, we would submit that the Circuit Court's decision, even based on the collective bargaining agreement, is correct. The other thing I think that needs to be pointed out is the Third District Appellate Court's decision, the majority decision, seems to ignore its own prior holdings in the Village of Precourt and in the Peoria case, which is out of the Third District. There's really no reference made to that decision at all. And I think Judge Justice McDade, in her dissent, properly pointed out how analogous and important those decisions were in deciding the case in front of the Court. In addition, there's a case that's been cited to you, the Board of Governors case, which is a Fourth District case. The Board of Governors case discusses an issue where a teacher went in front of the Merit Board, even though she had filed grievance, but she went forward with her proceeding in front of the Merit Board. There was an unfair labor practice charge filed regarding the actions that the employer took in that case. The court there found, once she decided to go forward in front of the Merit Board, that she was precluded from then pursuing the grievance arbitration. I think that's what we have here. I think that if the appeal had been taken from the Police and Fire Commission Board on all issues, they would have the opportunity to bring it up in front of the Circuit Court and move forward with those issues, including the language argument, including the 30-day argument. That's why we had all this piecemeal litigation. We've had two appeals on this case, one brought by the Benevolent and one that was actually both brought by the Benevolent in regard to the same action. The facts regarding what would take place in front of a grievance arbitration and what would take place in front of the Board are identical. The redress they wanted is identical. I would submit that based on the res judicata arguments, the judicial economy arguments that we've made, as well as even a review of the language of the contract in light of the cases, would lead to this Court reversing the Third District Appellate Court and entering a finding consistent with what the trial court did in granting summary judgment. Thank you. Thank you, Counsel. Thank you. Good morning, Your Honors. May it please the Court, my name is Charles Crowley, Counsel for the Respondents. I am here today with Officer Salvador Lopez. I also am representing the Policeman's Benevolent Labor Committee. I'm a staff attorney with that union. The narrow issue before the Court today is whether the parties agreed to arbitrate matters of discipline. As the Third District stated, the answer to this question and the intertwined question of who is to decide arbitrability must be decided based on the party's labor agreement. The Third District reversed the trial court's grant of summary judgment because it applied this honorable court's position in Donaldson. Under Donaldson, the court must order the parties to proceed to arbitration if either A, it's clear that the parties agreed to arbitrate the matter in dispute, or B, it's unclear whether the subject matter is subject to arbitration. Only if the parties clearly do not agree to arbitrate a matter. Mr. Crowley, is it of no consequence, as we've been hearing for the last 15 or 20 minutes, that defendants participated in the board hearing before the board's decision became final, when defendants didn't seek review of the decision? Well, I believe that the legislative policies favoring arbitration, which is reflected in Donaldson as incorporated through the Uniform Arbitration Act, takes precedent over these arguments. Maybe, but should the defendant be able to get two bites at the apple? Let's go through the board, see how we do there, not even review the decision, and now we'll bring up that we should have had arbitration. There's several points to address here, but I think foremost is that the village should not be able to enter into an agreement and then use the judicial process to circumvent that higher standard that it agreed to. That's the reason why we're here today. Why was there participation then in the board hearing? Why wasn't that position taken before the board hearing? There was no adverse employment action prior to the board hearing. The charges were filed, but Officer Lopez remained doing regular patrol duty. He was on the street with a badge and a gun. He even received a commendation from the department in between the time that charges were filed and that there was a hearing. So you were precluded from, once there was a board action filed, you were precluded from indicating that the proper form was arbitration? I can speak for myself as the attorney for the union that I stated several times to counsel and to the chief that whether an adverse employment action in any kind of discipline would occur, be it from the chief, from the department, or from the Board of Fire and Police Commission, that it would be subject to the Article V broad provision for arbitration. Was anything filed in that respect? Once he was terminated, yes, there was a grievance filed. Was anything filed with respect to arbitration being the proper form? In line with what you were telling people. Well, there was no termination to grieve at that point. There was nothing to grieve yet. It wasn't until there was the hearing held that there was both a termination to grieve and also as stated in Article V, the contract states that the only proper venue for deciding issues of contract interpretation and administration is the grievance procedure. So really under the contract, to go into administrative review would actually conflict with the language that the parties agreed to. Is there anything of record that tells us why you didn't seek judicial review? I don't believe so. And under your theory, if you had, if you offered to talk judicial review to the Board's decision and it had been affirmed, would you still be able to seek grievance and demand arbitration? Essentially that's what the parties agreed to and that is what the municipal code allows. The municipal code allows for alternative or supplemental form of due process bargained by the parties. Now, in the cases cited by the petitioner, that was not the case with the municipal code at that point. The municipal code was amended by Public Act 91-650 in 1999 to reflect the legislative preference for arbitration and labor disputes, but at that time it was only for home rule municipalities like Bartonville, whereas say at the time of the Rockford case, Rockford was a non-home rule municipality. And then in 2007, the municipal code was amended by Public Act 95-356 to reflect the legislative preference in both home rule and non-home rule municipalities. Again, this is a matter of taking this honorable court's decision in Donaldson and the preference for labor arbitration as a uniquely suitable venue for determining contract language and administration of the contract language. And to use cases which were decided based on different statutory language goes against both reason and against the legislative preference. This court and the lower courts have recognized that arbitration is uniquely suitable for procedures resolving labor disputes. Especially arbitration provisions of a collective bargaining agreement are to be given a broader interpretation than any single provision in a commercial agreement. Article 5, the village and the union are parties to a collective bargaining agreement which arises under the Illinois Public Relations Act. The Act incorporates the Uniform Arbitration Act by reference. As I stated, the arbitration procedures at Article 5 is mandated by the Act. It defines agreements broadly as a dispute or difference of opinion involving the meeting, interpretation, or application of the provisions of the agreement. It also states that the agreements procedure is a sole and exclusive procedure for resolving any agreements. Discipline is covered by Article 6. The provisions of Article 6 express the party's agreement that discipline be progressive, corrective, and for just cause. Article 6 specifically references termination, stating that it should be reserved for extreme cases only. Now why would the village enter into an agreement involving that specifically references termination, go on to believe that only termination can be acted out upon by the Board of Fire and Police Commission, and then escape the higher standard in that collective bargaining agreement by arguing all the way to the State Supreme Court that the termination is not subject to the standards set forth in the contract? If you had prevailed before the Board of Fire and Police and Fire Commissioners, would the village have had the right to pursue arbitration? If it believed that there was a contract dispute. Under the same analysis that you gave, that it's covered by the collective bargaining agreement, would it work the other way too? I don't personally see what the violation of the contract would then be, but that is the proper venue for a alleged violation, or as it states in the contract, even difference of opinion in regards to the interpretation or administration of the contract. The third district... And it's your position that prior to the termination order from the Board, you had no way of making that known? I think you said earlier that as far as pointing out the arbitration provision, you couldn't do that until there was a termination, and there was a termination by the Board. But that seems somewhat circuitous, because you're saying from the get-go it should have been filed per the arbitration portion of the collective bargaining agreement. No, that's not what I'm intending to say. What I'm saying is that there was no contract violation until there was a termination without just cause. It was not progressive or corrective, and it was not an extreme case. So are you saying this was the proper procedure here, but after the Board made the determination it has to go to arbitration, or was the proper procedure to go to arbitration from the get-go? If the parties wanted to only go to arbitration, then that's what the parties needed to negotiate. There's plenty of contracts out there that have an election. It's stated in the contract that there's an election between going to the Board of Fire and Police Commission or going to grievance arbitration. There is no such election in the collective bargaining agreement of the parties. There is no reference to the Board of Fire and Police Commission at all. There is only reference to discipline. So it only stands to reason that discipline, whether issued by the Department or by the Board of Fire and Police Commission, is subject to grievance arbitration. The 3rd District in the 2012 Constant Decision stated the standard for determining arbitrability in public employee labor disputes is the relevant inquiry is the case under the right hand of the Act is whether the parties, through their written agreement, showed an intent to exclude from arbitration a disputed matter. It must be through the writing. It is not based, as the 3rd District noted, it's not based on the party's history. It is based on the contract. Nonetheless, the affidavit of the Chief made no specific references to any actual discipline going to the Board of Fire and Police Commission or arbitration. As a matter of fact, it is not a high discipline unit. The 3rd District's decision in Thompson, unlike the cases of the lower court cited by Petitioner, are consistent with this honorable court's decision in Donaldson. The order of the trial court made no finding of a provision that would exclude the provision of Article VI from the scope of Article V grievance. The Petitioner argues that discipline is subject to arbitration because it is not specifically included by a separate provision. This is the inverse of the standard. While the majority opinion is correct that any question of arbitrability must go to the arbitrator rather than the courts, I would direct this court to Justice O'Brien's concurrence for a proper application of both Donaldson and Thompson. Petitioner has the burden of demonstrating that the parties, by way of their written agreement, have excluded discipline from the scope of arbitration because everything recited in the Collective Bargaining Agreement for public employees in the State of Illinois is by default subject to grievance arbitration unless mutually agreed otherwise. The Board of Fire and Police Commission is a creature of statute and thus has only the authority granted to it by the Municipal Code. Section 10-2.1-17 grants the Board authority to hear charges for discipline to determine whether cause exists. Is acquiescence mutual agreement? The fact that you acquiesced in participating in the Board hearing, is that mutual agreement? It was clear from the onset that there was going to be a Board of Fire and Police Commission hearing no matter what. We found it in our best interest that we leave you there to observe. And if you look at the transcript in my opening statement and in my closing statement, I did not... The petitioner has misstated several times that the union asked the Board to decide on whether or not they could determine the arbitrability or the contract interpretation. Neither party ever put anything regarding the terms of the contract or provisions of the contract before the Board of Fire and Police Commission. And the union simply stated, if you look at the transcript, stated that no matter whether the term... adverse employment action were to come from the Chief, the Department, or the Board, it would be subject to the terms of the contract, the contract of broad scope arbitration. Neither the union nor the village entered the collective bargaining agreement into evidence or raised any arguments in terms of the application or interpretation of the collective bargaining agreement. Here we see a difference between this case at hand and Rockford, in which, for some reason, the union actually put the contract into evidence. But I would submit that asking the union or asking a quasi-judicial body to make determinations about something it has no jurisdiction to decide upon would make about as much sense as me trying to get a marriage certificate from the labor board. Sure, I can ask for it, but they have no ability, authority, or jurisdiction to grant it. Under Section 15A of the Labor Act, the Labor Act supersedes any conflicting law, which arguably prohibits employees' right to use available arbitration procedures. So to any extent the Labor Act conflicts with the municipal code or administrative review law, the Labor Act prevails. However, no such conflict exists. As I stated, the municipal code has gone through amendments in 1999-2007. The municipal code now allows for an alternative or supplemental form of due process. This doesn't just mean an election. This means that it could be supplemental. If we were to only say that it means an election, then it would make the term supplemental at best purposeless and at worst strike out language from the legislature. And the municipal code also now states that such bargaining over a potential alternative or supplemental form of due process is mandatory. The party's agreement shows no intention to exclude discipline issued by the 405 Police Commission from the scope of arbitration. If the village intended that the officers pick one process or the other, they could have bargained language with that result. The village knowingly entered into an agreement with a just cause provision and provisions requiring that termination be progressive, corrective, and only in extreme cases. The village also entered into an arbitration agreement with the prospect of covering the potential disputes over provisions of the agreement. It is not only against the principles of judicial economy, but a misuse of the judicial process to now attempt to circumvent the standard it agreed to, seeking to seek out the lesser standard found in municipal code. What is the difference between cause and just cause? There are cases that say that there is no difference. There are cases that say that there are a difference. I think the best example is the fact that the village has used its resources and time to argue all the way up to the state Supreme Court in order to stick with the standard of cause rather than the standard of just cause under the agreement. A petitioner assumes that the 3rd District in Thompson arbitrarily reversed itself from Peoria Firefighters and Creef Corps. This is incorrect. The municipal code is what changed. It changed to reflect the legislative preference found in Donaldson and restated in Thompson. Therefore, respondents respectfully request that the decision of the 3rd District be upheld. I would also note that with the Board of Governors, the Board of Governors was decided four months prior to Donaldson. The Board of Governors is a 4th District case, and it did not yet have the guidance established by Donaldson to show the legislative preference for arbitration. Thank you, Counselor. Thank you. I'd just like to point out a few things. There was a motion to stay that was filed before the Board went forward with the hearing. I'm sorry, could you speak up a little louder? I'm sorry. There was a motion to stay the proceedings filed before the Board hearing based on a jurisdictional argument. I should say a declaratory judgment action is a better way to phrase it, where they argued that under the municipal code that the Board had lost jurisdiction. So in that case, they used the municipal code as a sword. The cases in regards to Donaldson and Thompson do not involve interrelationship between the Illinois Municipal Code and the Administrative Review Law. To address one of the points raised by the Justices, the City of Rockford case talks about why didn't the union go in before the Board hearing and ask to have it stayed based on their argument under the collective bargaining agreement. They had that opportunity, just like they had the opportunity when they filed for the declaratory judgment regarding the 30-day analysis under the Illinois Municipal Code. I would submit if you look in the pleadings that are part of the record that the Board clearly had jurisdiction in this matter. And I would submit that arguably the appellees here have admitted the Board had jurisdiction in this matter. In addressing the amendments that was raised as to why suddenly this case law in the City of Rockford, the Village Brief Court, the Peoria case, the Board of Governors case is no longer good law. I would submit there was no cases cited that I saw in the brief regarding that argument. And if you look at those amendments or changes to the act, it would have no bearing in regards to the case holdings that have been cited in our brief regarding the race judicata argument. When you look at the record in this case, they fully participated in the hearing. They cross-examined witnesses. They made arguments. And if you look at the grievance that's been filed in this case, they are essentially seeking the same thing they were seeking in front of the Board. And it gets back to the two bites of the apple that was previously discussed. I would submit they picked a lane to travel. The lane of travel, they didn't take it out to its full conclusion. They cannot now come in and argue this grievance arbitration should be applied. Look at the cases in regards to the City of Peoria case. And in that case, they talk about the irrational results that could occur. You could have a case literally go up in front of this Honorable Court. They make a decision. The grievance then is filed, and a sergeant in the precinct makes a contrary decision. That's not what this should be about. What this should be about is upholding the jurisdiction of the Police and Fire Commission, upholding the case law that has interpreted the municipal law and the administrative law, and not get sidetracked by these arguments on Donaldson and Thompson, which discuss not the Illinois Municipal Law Act, not the Administrative Review Act, but discuss the issue of arbitration in the first place. I would submit that issue was in front of the Board, and it could have been in front of the Circuit Court, and it could have been in front of the Appellate Court. Instead of the circuitous route we have now, where we're now in front of this Court. Thank you for your time today. Thank you. Case number 120643, Village of Bartonville v. Salvador Lopez, et al., will be taken under advisement as Agenda 21. Mr. Snodgrass and Mr. Crowley, we thank you for your arguments this morning. You are excused at this time. Thank you.